UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SHARON A. CAMPBELL, | No. CV 08-7059-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 28, 2008, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 26, 2008, and December 1, 2008. The parties filed a Joint Stipulation on June 2, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## **BACKGROUND**

Plaintiff was born on January 9, 1965. [Administrative Record ("AR") at 136, 242.] She has some high school education [AR at 36, 62, 349], and has past relevant work experience as a pharmacy and warehouse stock clerk, a motor home cleaner, a house keeper, a waitress, and a bus driver. [AR at 44, 62-63, 140, 149-56.]

Plaintiff filed her application for Disability Insurance Benefits on August 6, 2004, alleging that she has been unable to work since March 28, 2002, due to, among other things, a severe back injury. [AR at 131, 136-45.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 119-30.] A hearing was held on October 2, 2006, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 25, 58-78.] On January 25, 2007, the ALJ determined that plaintiff was not disabled. [AR at 22-30.] Plaintiff requested review of the hearing decision. [AR at 102.] On August 30, 2007, the Appeals Council vacated and remanded the ALJ's decision. [AR at 91-93.] The Council found that the ALJ had misinterpreted the findings of plaintiff's treating physician, Dr. Edward Stokes, and failed to substantively address plaintiff's obesity. [AR at 92-93.] The Council ordered the ALJ to: (1) further consider and explain the weight given to the treating, examining, and non-examining source opinions; (2) discuss the issue of obesity; and (3) if necessary, obtain evidence from a medical expert regarding the severity and nature of plaintiff's condition. [AR at 93.] A second administrative hearing was held on March 25, 2008, at which time plaintiff again appeared with counsel and testified on her own behalf. [AR at 31-57.] A vocational expert also testified. [AR at 48-55.] On May 8, 2008, the ALJ again determined that plaintiff was not disabled. [AR at 10-20.] Plaintiff requested review of the hearing decision. [AR at 528.] When the Appeals Council denied plaintiff's request for review on August 29, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.] This action followed.

/
/
/

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity ("SGA") since July 1, 2002, the alleged onset date of the disability.[1] [AR at 15.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of "status post anterior lumbar interbody fusion and obesity." [AR at 16.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found

---

[1] The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through March 31, 2008. [AR at 15.]

4

that plaintiff retained the residual functional capacity ("RFC")[2] "to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday." [AR at 16-18.] At step four, the ALJ concluded that plaintiff was capable of performing all of her past relevant work. [AR at 18.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 19-20.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in: (1) improperly rejecting the opinion of the treating physicians; and (2) failing to provide clear and convincing reasons for finding plaintiff incredible. [Joint Stipulation ("JS") at 5-12, 20-24, 26-27.] As set forth below, the Court agrees with plaintiff, and remands the matter for further proceedings.

**A.   THE EVIDENCE**

On March 28, 2002, while working as a bus driver, plaintiff was injured when a car hit the bus she was driving. [AR at 181, 292-93, 429.] On the date of her accident, she was taken to the emergency room and released after receiving pain medication and undergoing x-rays. [AR at 181, 293, 429.] Thereafter plaintiff received physical therapy for six months, and was diagnosed with "disc herniation, left central, at L5-S1." [AR at 181-82, 293, 429.] Plaintiff's medical records demonstrate that during the six years following her bus accident, she frequently received treatment from her two treating physicians, Dr. Michael Schiffman and Dr. Edward G. Stokes. Plaintiff received a series of epidural injections with no relief to her back pain. [AR at 181, 471, 477.] In March 2003, she underwent "lumbar spine laminectomy and disc excision," which resulted in a dural tear. [AR at 168-71, 182, 284, 429.] She received additional surgical treatment and was put into an intensive care unit for one week to drain the cerebrospinal fluid that had leaked as a result

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

of the tear.  [AR at 163-68, 429.]  After her operations, plaintiff's medical records show that she complained of increased back pain, headaches, pain and weakness in her legs, and incontinence. [AR at 182-83, 317, 321, 323, 329, 331, 335, 463, 467, 477, 481, 488-89, 492.]  As a result of her injury, plaintiff used a back brace, a cervical pillow, a knee brace, a cane and a walker.  [AR at 39-41, 46-47, 182, 272, 278, 280, 288, 320.]  Over the years, plaintiff's doctors have prescribed, among other drugs, Soma, Tylenol III, Vicodin, Morphine, Ambien, Vistaril, Prozac, Percocet, and Lidoderm patches to help her manage her pain, insomnia, and depression.  [AR at 37, 64, 68, 182, 276, 280, 336.]  Doctors have twice implanted a spinal cord stimulator into plaintiff's back, and her doctors have also considered installing a morphine pump.  [AR at 37-38, 183, 317, 323, 465, 477-78.]

Plaintiff testified at her first hearing that her back pain is so severe and constant that she can "barely get up in the morning."  [AR at 64.]  She described her back pain as constant "pounding, shooting pains all day, going across the back," and then shooting into her left leg.  [AR at 65.]  She explained at both hearings that she also suffers from neck pain, lightheadedness, depression, headaches, and urinary and bowel incontinence for which she wears diapers every day.  [AR at 43-46, 64-68.]  Plaintiff testified that she depends on her parents to take care of her daily needs, including household chores, cooking, and shopping.  [AR at 41-42, 69-70.]  She also testified that she is unable to sit for more than ten minutes, stand for more than six minutes, or walk more than half a block.  [AR at 39-41, 70-71.]

**B.    TREATING PHYSICIANS' OPINION**

Plaintiff asserts that the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr. Stokes, plaintiff's treating orthopedic specialist, and that the ALJ improperly failed to consider the opinion of plaintiff's treating orthopedic surgeon, Dr. Schiffman.  [JS at 5-12, 20-21.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also

6

Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference. Id.; Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[4] The ALJ must provide specific, legitimate reasons for rejecting a treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); see also SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Here, the ALJ explicitly rejected Dr. Stokes' assessment for several reasons, all of which were insufficient. First, the ALJ generally found Dr. Stokes' assessment "to be the usual, accommodative, egregiously exaggerated one doctors have no hesitancy to submit to the Social Security Administration but would not dare send to the worker's compensation forum." [AR at 17.] This assertion is inadequate to reject Dr. Stokes' opinion, as the ALJ points to no evidence of any actual impropriety on the part of Dr. Stokes. [AR at 19.] See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)). The record contains no evidence that Dr. Stokes embellished his assessment of plaintiff's limitations in order to assist her with her benefits claim. See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). In addition, to the extent that the ALJ's assertion of egregious exaggeration is based on the fact that some of Dr. Stokes' records were procured by plaintiff for the purpose of her disability claim,[5] such an assertion also does not provide a sufficient basis for rejecting Dr. Stokes' opinion, as "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." See Lester, 81 F.3d at 832. Thus, the ALJ's statement that Dr. Stokes' opinion was accommodative and exaggerated does not support his rejection of that opinion.

The ALJ also determined that Dr. Stokes' overall assessment of plaintiff's limitations was rendered incredible by his October 6, 2004, recommendation that plaintiff receive vocational rehabilitation services. [AR at 17, 186.] The ALJ implied that Dr. Stokes gave inconsistent assessments of plaintiff's condition, by comparing Dr. Stokes' October 2004 recommendation with

---

[5] Some of Dr. Stokes' medical reports are directed to plaintiff's attorney. [AR at 321-22, 329-32, 335-36, 463-72.]

8

two of his later findings that plaintiff was quite functionally limited.[6] The ALJ reasoned that "[i]f [plaintiff] can function only to the limits [Dr. Stokes] asserts, vocational rehabilitation would be a complete exercise in futility[,] . . . [as] she would obviously be unable to perform any job." [AR at 17, 186.] In determining the weight to accord a treating physician's opinion, the ALJ may properly consider whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). However, in doing so, the ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Although Dr. Stokes submitted six years' worth of records regarding his treatment of plaintiff's condition, the ALJ focused on only three reports in rejecting Dr. Stokes' assessment. [AR at 17, 186, 311-15, 474.] An analysis of all of plaintiff's medical records in fact indicates that her medical condition worsened after October 2004, and that as a result, Dr. Stokes' subsequent assessments of plaintiff's capabilities were consistently more limited.[7] Indeed, after October 2004, Dr. Stokes

---

[6] The ALJ cited Dr. Stokes' August 18, 2005, report in which he found that plaintiff could lift no more than three pounds and was unable to sit for more than 30 minutes and stand and/or walk for more than a total of 15 minutes during an eight-hour work day. [AR at 17, 311-15.] The ALJ also noted Dr. Stokes' similar finding on April 1, 2008, that plaintiff could not stand, sit, or walk for more than 30 minutes total during an eight-hour work day and could never lift more than three pounds. [AR at 17, 474.]

[7] Dr. Stokes' June 13, 2005, medical report stated that plaintiff complained of "severe unrelenting low back pain with radiating pain into her left thigh" as well as "recent episodes of bowel incontinence." [AR at 317-18.] Dr. Stokes recommended plaintiff for a "dorsal column stimulator or a Morphine pump in an attempt to obtain some relief of her severe lower back pain." [Id.] On September 15, 2005, Dr. Stokes noted that plaintiff complained of "constant burning low back pain," and recommended that she "remain off of work." [AR 321-22.] On October 24, 2005, Dr. Stokes noted plaintiff's development of a "left foot drop" and her complaints of severe back pain and incontinence. [AR at 323-26.] On December 22, 2005, Dr. Stokes again recommended that plaintiff remain off work, noting plaintiff's complaints of "severe low back pain and left hip pain" as well as weakness in her left leg. [AR at 329-30.] By January 23, 2006, plaintiff's back pain was worse and she was also experiencing neck pain. [AR at 331-32.] Dr. Stokes again recommended that plaintiff remain off work. [AR at 332.] On April 27, 2006, Dr. Stokes found plaintiff to have

9

never again recommended plaintiff for vocation rehabilitation. There is nothing inconsistent in recommending rehabilitation in 2004, and then finding functional limitations preventing work in later years. In selectively reading the record, the ALJ failed to provide clear and convincing reasons for finding Dr. Stokes' assessments to be inconsistent.

The ALJ also found that there was a lack of objective medical evidence, "such as muscle atrophy[,] to indicate [plaintiff] is bed-ridden," which may have corroborated Dr. Stokes' assessment regarding the extent of plaintiff's limitations. [AR at 17.] First, the ALJ's assertion is an insufficient reason to disregard Dr. Stokes' assessment, as it does not reach the level of specificity required in order to reject the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted). Moreover, plaintiff's medical records actually do present objective findings corroborating Dr. Stokes' assessment of plaintiff's medical condition and her limitations. For example, the medical records document that plaintiff had palpable tenderness over her lumbar spine; observable muscle spasms; an antalgic gait pattern; a limited range of back motion; and a notable difference with her legs in which one was colder in temperature, more hypersensitive to touch, and notably weaker than the other. [AR at 269-70, 293-94, 311, 313, 321-22, 324, 330, 331, 335, 459, 463, 465, 467, 477, 484, 489, 493, 523.] Given the objective medical evidence

---

reached permanent and stationary disability status, and noted her complaints of severe radiating back pain. [AR at 335-36.] On June 8, 2006, plaintiff had severe back pain, pain in both legs, and bladder and bowel incontinence. [AR at 463-64.] On March 29, 2007, plaintiff complained of increased pain. [AR at 465-66.] On July 30, 2007, plaintiff's pain had increased, and Dr. Stokes found her to remain permanent and stationary. [AR 467-68.] On August 27, 2007, Dr. Stokes noted plaintiff's complaints of unimproved back pain and difficulty sleeping at night. [AR at 469-70.] The Court notes that each of these reports was accompanied by a physical examination of plaintiff.

corroborating Dr. Stokes' opinion, the Court finds that the lack of muscle atrophy is not sufficient to reject Dr. Stokes' assessment.

Plaintiff also argues that the ALJ erred by failing to consider the opinion of plaintiff's second treating physician, Dr. Schiffman.  [JS at 8-9.]  Dr. Schiffman's findings corroborate Dr. Stokes' findings regarding plaintiff's limitations and worsening condition.[8]  [AR at 269-95, 476-525.]  For example, on April 17, 2003, Dr. Schiffman reported that plaintiff was exhibiting "very mild residual postural symptoms," and he thought "in the long run, she will be fine."  [AR at 289.]  Similar to the findings of Dr. Stokes, however, Dr. Schiffman's subsequent reports also indicate that plaintiff's condition worsened.  For instance, on April 20, 2007, Dr. Schiffman reported that plaintiff's low back and leg pain had become "much worse" and that she was having incontinence problems.  [AR at 496.]  On May 31, 2007, Dr. Schiffman found that plaintiff was "considerably encumbered due to her ongoing lumbar spine complaints."  [AR at 493.]  On July 19, 2007, Dr. Schiffman found that plaintiff had a weak left leg, neck pain, muscle spasms, restricted range of motion, and an increase in back pain and headaches.  [AR at 488-89.]  While the ALJ was not obligated to "reconcile explicitly every conflicting shred of medical [evidence]," the Court "cannot accept an unreasoned rejection of all the medical evidence in [plaintiff's] favor."  Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983).  Because Dr. Schiffman was plaintiff's treating physician and his findings were consistent with those of Dr. Stokes, Dr. Schiffman's opinion was entitled to great weight.  Lester, 81 F.3d at 830; Orn, 495 F.3d at 634.  Therefore, the ALJ erred by failing to address Dr. Schiffman's opinion.  This failure is even more egregious as the Appeals Council remanded to consider not just Dr. Stokes' findings, but the opinions of all the treating physicians, and to explain the weight given to such evidence.

The ALJ's failure to provide legally sufficient reasons that are supported by substantial evidence for rejecting Dr. Stokes' opinion and completely failing to consider Dr. Schiffman's

---

[8] The consistency between Dr. Stokes' and Dr. Schiffman's findings regarding plaintiff's condition makes their opinions deserving of even greater weight.  20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); see also Orn, 495 F.3d at 634 (two treating physicians' findings are deserving of greater weight when both demonstrate plaintiff's worsening condition).

11

findings warrant remand. See Embrey, 849 F.2d at 422 (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (brackets in original) (citation omitted).

### C. PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony and failed to make proper credibility findings. [JS at 21-24, 26-27.]

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged

limitations. See id.; see also Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[9] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, the ALJ found plaintiff's "allegations to be greatly exaggerated and unsupported by established pathology." [AR at 18.] The ALJ discounted plaintiff's subjective complaints of pain and resulting limiting effects because: (1) based on the medical evidence, he found her alleged limitations incredible; and (2) Dr. Stokes' assessments demonstrated that she was more capable than alleged. [Id.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are neither clear nor convincing.

First, the ALJ did not provide a sufficiently clear and convincing reason for rejecting plaintiff's credibility based on his interpretation of the medical evidence. In finding plaintiff's alleged limitations "greatly exaggerated," the ALJ stated that he relied on "the medical evidence of record, including records submitted" since his first decision, and that he found plaintiff's testimony to be "less than fully credible." [AR at 18.] Specifically, the ALJ cited plaintiff's asserted need to lie down all day, which the ALJ found "is nowhere indicated as necessary by the medical record." [Id.] While it cannot provide the only basis to reject a claimant's credibility, the absence of objective medical evidence to support a plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective

---

[9] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

13

medical evidence.") (emphasis added).  Here, the ALJ's finding that the medical evidence does not sufficiently substantiate her alleged limitations and symptoms is not by itself enough to reject plaintiff's credibility.  More importantly, the Court is not confident that the ALJ actually based his credibility determination on all of the pertinent "medical evidence of record," since as explained herein, the ALJ's analysis of the medical evidence in rejecting the treating physicians' assessments was inadequate.  [AR at 18.]  Furthermore, the Court also finds that there actually is substantial objective medical evidence corroborating plaintiff's testimony regarding her back pain and resulting limitations.  For example, as noted above, the medical records document that plaintiff had palpable tenderness over her lumbar spine; observable muscle spasms; an antalgic gait pattern; a limited range of back motion; and a notable difference with her legs in which one was colder in temperature, more hypersensitive to touch, and notably weaker than the other.

Moreover, the ALJ's finding that there is no medical evidence in the record indicating that plaintiff needs to lie down all day is inconsistent with the reasons he gave for rejecting Dr. Stokes' opinion. [AR at 17-18.]  Specifically, the ALJ characterized Dr. Stokes' opinion that plaintiff is only able to stand, sit, and walk for short periods of time, as indicating that plaintiff is essentially "bed-ridden." [AR at 17.]  The ALJ's own characterization of Dr. Stokes' opinion demonstrates that there was indeed medical evidence -- the findings of Dr. Stokes -- supporting plaintiff's alleged need to lie down.  The ALJ must provide reasoning that is "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Here, the ALJ failed to show that he did not arbitrarily dismiss plaintiff's credibility, since his own interpretation of the medical evidence in fact indicates that Dr. Stokes' medical opinion supported plaintiff's asserted need to lie down all day.

The ALJ's second reason for dismissing plaintiff's credibility based on Dr. Stokes' findings, which according to the ALJ's analysis indicated that plaintiff was more capable that she alleged, was also inadequate. The Court notes that the ALJ's second reason for finding plaintiff incredible is exactly the same in both the January 25, 2007, and May 8, 2008, decisions denying plaintiff benefits. [AR at 18, 28.] In both opinions, the ALJ asserted that Dr. Stokes' findings indicated that plaintiff is capable of "sedentary work half the time and presumably greater than sedentary the rest

14

of the time." [AR 18, 28, 423.] The ALJ also noted in both opinions that "Dr. Stokes recommended vocational rehabilitation for [plaintiff]; a clear indication that she could perform substantial gainful activity." [AR at 18, 28, 341.] Significantly, it was precisely because of this reasoning that the Council reversed and remanded the ALJ's first decision. [AR at 92.] The Appeals Council found that the ALJ misinterpreted the significance of Dr. Stokes' October 6, 2004, report that stated that plaintiff "has a disability with limitation to sedentary work, half time and no prolonged driving." [AR at 28, 92-93, 423.] Specifically, the Council found:

> Although Dr. Stokes was not specific on what [plaintiff's] work capacity was for the other 'half time', the [ALJ] presumed it was for a level greater than sedentary work[.] [AR at 423.]
>
> However, this presumption is not consistent with Dr. Stokes' opinion rendered in a physical RFC questionnaire dated August 18, 2005[.] [AR at 311-15.] Here, Dr. Stokes indicated that [plaintiff] could only sit for a total of one-half hour in an 8-hour workday, and stand/walk for 15 minutes in an 8-hour workday. Significantly, this evidence was not addressed by the [ALJ].

[AR at 92.] On remand, the Council instructed the ALJ to address "all of the [medical] opinion evidence" and "explain the probative weight afforded." [AR at 92-93.]

The Court agrees with the Council's determination that the ALJ erred by misinterpreting Dr. Stokes' October 6, 2004, finding regarding what plaintiff was capable of doing during the other half of her time. The ALJ failed to resolve this issue even on remand. In his October 6, 2004, report, Dr. Stokes found that plaintiff was suffering from "increased lower back pain that radiates into her thighs," and that she used a body brace, ankle brace, and cane. [AR at 182.] Dr. Stokes also noted that "[d]ue to [plaintiff's] complaints of persistent lower back pain," she was referred to pain management, prescribed a home health care provider, and given a back brace and cervical pillow. [AR at 183.] Dr. Stokes also determined at that time that plaintiff was not able to return to her job as a bus driver. [AR at 186.] It was in the context of these medical findings that Dr. Stokes determined on October 6, 2004, that plaintiff "has a disability with limitation to sedentary work, half time." [AR at 186.] Considered in the context of Dr. Stokes' full report, there is no indication that Dr. Stokes intended to assert that plaintiff was capable of more than sedentary work for the other half of her time, and the ALJ failed to provide clear and convincing reasons for presuming otherwise in either his first or second decision.

15

The Court also finds that the ALJ failed to sufficiently explain how Dr. Stokes' October 2004 recommendation of vocational rehabilitation indicated that plaintiff was capable of SGA. As discussed herein, Dr. Stokes' later medical assessments concerning plaintiff's limitations indicate that plaintiff's functional capabilities became more limited as her condition worsened over time.[10] Dr. Stokes' findings regarding plaintiff's deteriorating condition are also corroborated by Dr. Schiffman's records concerning his treatment of plaintiff. [AR at 269-95, 476-525.] In using the medical evidence to discredit plaintiff's alleged limitations, the ALJ was required to consider Dr. Stokes' October 2004 vocational rehabilitation recommendation in light of all the relevant medical evidence, including the evidence demonstrating plaintiff's functional decline. See Reddick, 157 F.3d at 722-23. Just as it was improper for the ALJ to selectively consider the vocational rehabilitation recommendation in rejecting Dr. Stokes' opinion, so too was it improper for the ALJ to isolate the same recommendation in finding plaintiff incredible. Therefore, the Court finds that the ALJ did not provide adequate reasons, based on Dr. Stokes' findings, for dismissing plaintiff's credibility regarding the extent of her limitations.

"While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot affirm such a determination unless it is supported by specific findings and reasoning." Robbins v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006). The ALJ erred by failing to provide clear and convincing reasons for discounting plaintiff's subjective testimony. Therefore, remand is warranted on this issue.

**D.   REMAND OR AWARD OF BENEFITS**

Plaintiff asserts that "remanding this case would serve no purpose" and argues that the Court should reverse and award benefits. [JS at 23-24.] Plaintiff argues that because the ALJ improperly rejected plaintiff's credibility, the Court should credit plaintiff's testimony as true and award benefits. When an ALJ improperly finds a plaintiff incredible, and the plaintiff would be deemed disabled if her testimony were credited as true, then remand for benefits is proper.

---

[10]   See supra, fn. 7.

16

1 Lester, 81 F.3d at 1401; see also Orn, 495 F.3d at 640. Since the Court has determined that the
2 ALJ's decision contains legal error warranting at least a remand, the only issue is whether the
3 record supports an award of benefits rather than a remand. As set forth below, the Court remands
4 the matter for further proceedings.

5 "'[W]hen the record provides persuasive proof of disability and a remand for further
6 evidentiary proceedings would serve no purpose,' it is appropriate for a court to reverse an ALJ's
7 decision and order the payment of benefits." Hartnett v. Apfel, 21 F.Supp.2d 217, 221 (E.D.N.Y.
8 1998) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). "By contrast, '[w]hen there are
9 gaps in the administrative record or the ALJ has applied an improper legal standard,' a case
10 should be remanded to the Commissioner for the further development of the evidence." Id. Here,
11 the ALJ improperly rejected plaintiff's credibility and failed to properly consider all of the relevant
12 medical evidence as instructed by the Appeals Council. However, although it is a close call, the
13 Court will not at this time reverse the ALJ's decision and award plaintiff benefits because disability
14 has not been conclusively established. Instead, the Court concludes that plaintiff is entitled to
15 reconsideration of her claim and that it is appropriate that the reconsideration be performed by a
16 different ALJ.[11] See Kolodnay v. Schweiker, 680 F.2d 878, 880 (2d Cir. 1982) (affirming the
17 authority to remand the case to a different ALJ); see also Ortiz v. Chater, 1997 WL 50217, at *3
18 n. 1 (E.D.N.Y. Jan. 30, 1997) (concluding that rather than have the same ALJ review a case for
19 the third time, a "fresh look by another ALJ would be beneficial"); Miles v. Chater, 84 F.3d 1397,
20 1401 (11th Cir. 1996) (holding that the impartiality of the ALJ is "integral to the integrity of the
21 [disability review process]" and remanding to a new ALJ because the original ALJ's failure to

---

[11] "[W]hen the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." Sutherland v. Barnhart, 322 F.Supp.2d 282, 291-93 (E.D.N.Y. 2004). An ALJ may be disqualified if there is: "(1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." Id. Here, the ALJ appears to have ignored the Appeals Council's order, which causes the Court to harbor "serious concerns" about that ALJ's ability to further review this matter.

support his findings with evidence reflected that "the process was compromised"); 20 C.F.R. § 404.940 ("An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.").

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider: (1) Dr. Stokes' opinion; (2) Dr. Schiffman's opinion; and (3) plaintiff's credibility regarding her limitations.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion; the action shall be assigned to a different ALJ for all further proceedings.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 7, 2009

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE